**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| SECURITIES AND EXCHANGE COMMISSION, | ) | |
| | ) | |
| **Plaintiff,** | ) | CASE NO. ---------- |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL W. PATTERSON and | ) | JURY TRIAL DEMANDED |
| BATTLE MOTORS, INC., | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

## COMPLAINT

Plaintiff, the Securities and Exchange Commission ("SEC"), alleges as follows:

## SUMMARY

1.      This action arises from misleading statements made by electric vehicle manufacturer Battle Motors, Inc. ("Battle") and its CEO, Michael W. Patterson ("Patterson"), in connection with an offering of convertible debt by Battle in September 2021 that raised $112.5 million from outside investors (the "September 2021 offering").

2.      Patterson established Battle in December 2020.  In February 2021, Battle purchased a legacy manufacturer of trucks for commercial and municipal use including waste hauling, towing, delivery, and other uses, and planned to convert the company's product line to battery-powered electric vehicles.  Battle raised funds for the conversion through the September 2021 offering.

1

3.      In connection with the September 2021 offering, Patterson and Battle (collectively, "Defendants") made false and misleading statements that overstated Battle's performance metrics, including the number of purchase orders Battle had received for electric vehicles, the value of those orders, and the number of vehicle dealers in Battle's dealer network.

4.      As a result of the conduct alleged in this Complaint, Defendants negligently violated Sections 17(a)(2) and (3)  of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)].  Unless restrained and enjoined, they are reasonably likely to continue to violate the federal securities laws.

5.      The Commission seeks a judgment from the Court: (i) permanently enjoining the Defendants from violating Sections 17(a)(2) and (3) of the Securities Act by committing or engaging in specified actions or activities relevant to such violations as alleged and asserted below; (ii) barring Patterson from serving an officer or director of a public company for two years; (iii) directing the Defendants to pay civil money penalties; (iv) granting such other and further relief as this Court may determine to be just, equitable, and necessary.

## JURISDICTION AND VENUE

6.      The SEC brings this action pursuant to Section 20(b) of the Securities Act [15U.S.C. §77t(b)].  In connection with the conduct described herein, Defendants directly or indirectly made use of the means or instrumentality of interstate commerce, or of the mails, in connection with their actions as alleged in this Complaint.  Defendants solicited and received funds from investors throughout the United States and abroad by interstate wire transfers, and Patterson communicated with and solicited out of state investors via telephone, email, and video conference calls.

2

7. Venue is proper in this Court pursuant to Section 22(a) of the Securities Act [15U.S.C. § 78v(a)]. Battle is headquartered in this District, and certain acts, practices and courses of business constituting the violations alleged occurred within this District.

## DEFENDANTS

8. **Michael W. Patterson**, 58, is the founder and CEO of Battle. Patterson previously founded Romeo Power, Inc., a manufacturer of batteries for commercial vehicles, and served as an officer of the company.

9. **Battle Motors, Inc.** is a Delaware corporation with its principal place of business in New Philadelphia, Ohio. Battle manufactures battery-powered electric trucks for commercial and municipal use and employs around 700 workers. Neither Battle nor Battle's common stock is registered with the Commission.

## FACTS

10. In December 2020, Patterson founded Battle to manufacture battery-powered electric trucks for municipal and commercial use.

11. In February 2021, Battle acquired Crane Carrier Company, LLC, a 75-year-old manufacturer of diesel and natural gas vehicles.

12. Battle planned to produce electric vehicles by converting Crane Carrier Company's product line to battery-powered electric vehicles.

13. Battle raised capital from several offerings, including a September 2021 offering of convertible debt that raised $112.5 million from two outside investors.

3

14. In connection with the September 2021 offering, Battle, with the assistance of an investment banking consultant, created an informational slide deck (the "September 2021 presentation") to generate interest among potential investors. The presentation was disseminated to prospective investors by email, accessible via an invite-only data room, and made available to them during investor video conference calls.

15. Patterson, and others within Battle, assisted the investment banking consultant in drafting the September 2021 presentation, reviewed the final September 2021 presentation, and approved its dissemination to prospective investors.

16. The September 2021 presentation contained statements making it appear that Battle was more successful than it was. For example, it stated that Battle had received 115 electric vehicle purchase orders totaling $30 million in only three months. Battle, however, had not received the California Air Resources Board electric vehicle incentive vouchers (*i.e.*, state-funded financial incentives for zero-emission vehicles) necessary to finalize purchase orders for most of these vehicles. Battle and Patterson failed to correct the final version of the presentation, creating the misleading impression that the purchase order numbers represented in the presentation were accurate. At the time the presentation was created, Battle had only received eight electric vehicle purchase orders. As CEO of Battle, Patterson was or should have been aware that the representations regarding purchase orders were misleading.

17. The September 2021 presentation also stated that Battle had a dealer network comprised of 180 dealers with 320 locations which "[c]over[ed] 100% of the North American Market." Battle, however, had a dealer network consisting of only 47 dealers with 156 locations around the time of the statement. As CEO of Battle, Patterson was or should have been aware that the statements regarding the dealer network were misleading.

4

18.     In connection with the September 2021 presentation, Patterson provided an electric vehicle production schedule to an investment banker assisting Battle with its debt offering for further dissemination to potential investors.  The schedule contained 101 electric vehicle orders corresponding to $29.795 million in revenue.

19.     Upon receipt of a spreadsheet showing Battle's backlog of orders, a potential investor inquired whether the revenue totals in it were based on "firm orders" rather than "LOIs [letters of intent]."  In response, Patterson stated that all the entries were "firmly PO'd [purchase-ordered] except for 85 BEV units that just got voucher approval" from the California Air Resources Board (*i.e.*, approval for state-funded financial incentives for zero-emission vehicles) "and are being paired with [purchase orders] at the moment."  None of the vehicles, however, had received voucher approval from the California Air Resources Board.  In addition, Battle only had purchase orders for eight of the vehicles, amounting to approximately $2 million; the rest appeared on the order backlog based on expressions of customer interest.

## CLAIMS FOR RELIEF

### First Claim

### Violations of Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2)
**(Patterson and Battle)**

20.     The SEC realleges and incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

21.     Defendants have, by engaging in the negligent conduct set forth above, directly or indirectly, in the offer or sale of securities, by use of means or instrumentalities of interstate commerce or of the mails, obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

5

22.     By reason of the foregoing, Defendants violated, and unless restrained and enjoined, will continue to violate, Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

## Second Claim

### Violations of Section 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(3)
**(Patterson and Battle)**

23.     The SEC realleges and incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

24.     Defendants have, by engaging in the negligent conduct set forth above, directly or indirectly, in the offer or sale of securities, by use of means or instrumentalities of interstate commerce or of the mails, engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities.

25.     By reason of the foregoing, Defendants violated, and unless restrained and enjoined, will continue to violate, Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that this Court:

A.     Find that Defendants committed the violations alleged in this Complaint;

B.     Enter an injunction, in a form consistent with Rule 65 of the Federal Rules of Civil Procedure, permanently restraining and enjoining Defendants from violating, directly or indirectly, Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. § 77q(a)] by committing or engaging in specified actions or activities relevant to the violations Defendants are alleged to have committed in this Complaint;

C.     Order Defendants to pay a civil money penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)];

6

D.      Issue an order, pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u] and this Court's inherent equitable powers, prohibiting Defendant Patterson from serving as an officer or director of any issuer for a period of two years that has a class of securities registered pursuant to Section 12 of the Exchange Act, [15 U.S.C. § 78l], or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], as appropriate or necessary for the benefit of investors;

E.      Grant, pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u], any other equitable relief that may be appropriate or necessary for the benefit of investors; and

F.      Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

**JURY TRIAL DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission hereby demands a trial by jury.

This 10th day of July, 2026.

Respectfully submitted,

/s/Robert K. Gordon
Robert K. Gordon
Georgia Bar No. 302482
gordonr@sec.gov

M. Graham Loomis
Georgia Bar No. 457868
loomism@sec.gov

Counsel for Plaintiff
Securities and Exchange Commission
950 E. Paces Ferry Road NE
Suite 900
Atlanta, GA 30326
(404) 842-7600